UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15-cv-410-FDW

| | |
|---|---|
| RASSAN OMAR MCMILLAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| FNU SNIPES, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendants FNU Snipes and FNU Stanback. (Doc. No. 27). Plaintiff has not responded to the motion, and the time to do so has passed.

### I. BACKGROUND

#### A. Procedural Background

Pro se Plaintiff Rassan McMillan, an inmate in the custody of the North Carolina Department of Public Safety ("NCDPS"), filed this Complaint against moving Defendants Snipes, Stanback, and others on September 4, 2015.[1] Plaintiff alleges that Defendants used excessive force against him in violation of Plaintiff's Eighth Amendment rights. (Doc. No. 1 at 17). Plaintiff also alleges that these Defendants failed to intervene to protect Plaintiff from the

---

[1] This Court allowed the action to proceed against Defendants Snipes and Stanback, but dismissed claims against two "Doe" defendants as well as David Mitchell, and the Court also dismissed Plaintiff's due process claims. (Doc. No. 8). Thus, the only remaining claims are against Defendants Stanback and Snipes for excessive force and failure to intervene in violation of the Eighth Amendment and state law claims for assault and battery.

1

excessive force used against him.  (Id.).  Plaintiff also purports to bring state law claims of assault and battery against these Defendants.  (Id.).  Plaintiff seeks monetary damages and injunctive relief.  (Id.).

Defendants filed the pending summary judgment motion on October 14, 2016.  (Doc. No. 27).  On October 21, 2016, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).  (Doc. No. 33).  Plaintiff has not responded to the motion for summary judgment and the time to do so has passed.

### B. **Factual Background**

### 1. **Plaintiff's Allegations**

Because Plaintiff did not respond to the summary judgment, the Court has before it only the following allegations made in Plaintiff's verified Complaint:

On February 8, 2015, the plaintiff was a prisoner housed at Lanesboro on Richmond Unit in segregation.  On February 8, 2015, at or around 17:30 to 18:30 hours while serving dinner trays, plaintiff informed defendant Snipes that he wanted to declare an inmate medical emergency and defendant Snipes alleged that he would not report plaintiff's medical emergency.
When retrieving the dinner trays defendant Snipes came to plaintiff's door to retrieve[] his food tray and informed plaintiff that he would be seen by nursing staff regarding her earlier complaint, but no nursing staff responded to it if they were properly informed.
As first shift began to end, Defendant Stanback entered plaintiff's housing pod A-block for an hourly routine of [INME] assessment for all prisoners.  While defendant performed his assessment plaintiff confided in defendant an intention to commit suicide if he didn't speak with an [officer in charge] regarding his medical complaint.
Defendant Stanback informed defendant John Doe (who is not the normal sergeant for this particular rotation) and defendant John Doe later entered plaintiff's housing pod A-block and came to plaintiff's cell door (appearing irate with plaintiff by his disposition) and told plaintiff to wait 10 to 15 minutes before he attempted to commit suicide, because his shift was ending and [he] wanted to go home as soon as possible then left the pod.
Defendants Snipes and Stanback then returned to plaintiff's cell door and instructed him to stick his hands through the wicket trap door of his cell to be handcuffed and removed from his cell under the impression that he would be taken to medical for his complaint.  Because Snipes told plaintiff that was why he and defendant Stanback were taking him out of his assigned cell.
Upon plaintiff's cooperation with defendant's direct orders to submit to hand restraints, when sticking his hands through the wicket door, defendant Snipes viciously slammed the wicket door against plaintiff's hands, wrist, and arms without provocation.

2

Defendant Stanback did not intervene to prevent Snipes unwarranted assault against plaintiff.

Defendant Stanback then remained outside plaintiff's cell, while defendant Snipes exited A-pod eagerly proclaiming that he was going to have the plaintiff push the shield (a term used for several correctional officers dressed in full body armor, with plastic batons, chemical mace, and an electric shield to forceably extract a prisoner from their cell).

When defendant Snipes left the pod defendant Stanback told plaintiff to simply submit to the handcuffs, nothing else would occur and he would remove plaintiff from his cell (without assistance). . . . .

Again plaintiff complied with staff instructions, allowing defendant Stanback to place hand restraints on him fearing a malicious assault by more correctional officers under the false pretense that [Plaintiff] wanted a physical confrontation with the staff and electric shield.

When defendant Stanback and plaintiff exited A-pod defendant stopped and stood to his right, while defendant Snipes stood to the left of plaintiff, while defendant John Doe remained in front of plaintiff. Plaintiff then asked defendant Stanback why he stopped walking.

As plaintiff questioned defendant Stanback, defendant Snipes grinned and sarcastically told Defendant John Doe "that the plaintiff had kicked him."

Upon stating that he had been assaulted by plaintiff, defendant Snipes began to severely maul plaintiff with a series of punches to the face. And Defendant Stanback and John Doe joined defendant Snipes in the assault against plaintiff, by punching and kneeing plaintiff in various parts of his body as plaintiff [bent] over (still in hand restraints) to lessen the pain and injury he was receiving.

Defendants' attack upon plaintiff [led] to a forward movement by plaintiff when being assaulted, ending briefly when defendants Stanback (and upon information and belief defendants Snipes and John Doe. Plaintiff was in pain and disoriented from assault) grabbed plaintiff and picked him up off ground and threw him head first into a dirty clothes buggy giving further pain and injury to plaintiff's face, head, neck, and shoulders, back.

Defendants then removed plaintiff from the buggy. Defendants John Doe and Stanback each locked their arms into plaintiff's and pulled plaintiff into the main hallway.

Several other correctional officers who were then leaving work witnessed plaintiff being pulled into the main hallway . . . . When defendant John Doe saw other correctional officers watching him, Snipes, and Stanback with the plaintiff, he began yelling "take him down," repeatedly giving the appearance plaintiff was struggling or otherwise causing a problem.

Upon seeing a[n] inmate in [an] alleged attempt to be [disruptive], an officer who's unknown went and retrieved full body restraints for plaintiff's waist, ankles, and wrists.

When put in full restraints another officer defendant Jane Doe appeared and began to kick plaintiff in the butt, left kidney, and stomped on his head without cause.

Defendants Jane Doe and another officer (who placed leg restraints on plaintiff but did not assault him) attempted to put plaintiff into a holding cage.

Sergeant Diamond and another female correctional officer[] witnessed plaintiff's obvious distress and injuries (bleeding, swollen and blackened eye, bruises to face, head, neck, etc.) and demanded that plaintiff be given into her custody and escorted him to medical for medical assessment and treatment.

While in medical Sgt. Diamond took several photos of plaintiff's injuries. Plaintiff was assessed by a registered nurse who explained that he had received injuries to his neck, head, and

3

back as plaintiff had alleged during the assessment from the various assaults in addition to cuts and bleeding around his wrists and ankles from the restraints. Plaintiff additionally alleges that the assault . . . left him urinating black when attempting [to] use the bathroom.

(Doc. No. 1 at 10-15). Plaintiff alleges that three days after Defendants assaulted him, he was transferred from Lanesboro to Alexander to punitive segregation. (Id. at 16). Plaintiff alleges that disciplinary charges were brought against him for the incident at Lanesboro, but the charges were subsequently dismissed. Plaintiff contends that although the charges were dismissed, he has remained in punitive segregation at Alexander without cause for over six months.

2. **Defendants' Summary Judgment Materials**

In support of the summary judgment motion, Defendants rely on all pleadings and attachments and the affidavits of Defendants Snipes and Stanback, and the affidavit of David Mitchell, the Administrator of Lanesboro CI at all relevant times, with exhibits, including incident reports, Plaintiff's disciplinary report, and Plaintiff's grievance records related to this action. (Doc. No. 29: Mitchell Aff., Exs. A-D; Doc. No. 30: Stanback Aff.; Doc. No. 31: Snipes Aff.).

Defendants' evidence on summary judgment shows that on February 8, 2015, Plaintiff was housed on the Richmond Unit at Lanesboro CI. (Doc. No. 29 at ¶ 10). On that date, Plaintiff threatened to kill himself and was seen with a bottle of pills and was then seen swallowing one pill. (Id. at ¶ 11). Defendants Stanback and Snipes went to Plaintiff's cell to restrain him and have him exit his cell. (Doc. No. 30 at ¶ 8; Doc. No. 31 at ¶ 8). They opened his wicket door and requested that he submit his arms to restraints. (Id.). Plaintiff refused to submit to handcuffs and refused to move his hands from the wicket door. (Doc. No. 30 at ¶ 9; Doc. No. 31 at ¶ 9). His arm was wrapped in a towel. (Id.). He held open the wicket door and demanded to see the officer in charge. (Id.). Defendant Snipes instructed Plaintiff to remove his

4

hands from the wicket and he refused. (Doc. No. 31 at ¶ 10). Plaintiff then swung at Snipes through the wicket opening. (Id.). Snipes then left the housing unit to report to Sergeant Kiker that Plaintiff had the wicket door open and refused to take his arms out. (Doc. No. 30 at ¶ 11; Doc. No. 31 at ¶ 11).

While Snipes was out of the unit, Stanback was able to talk Plaintiff into submitting to handcuffs and willingly exiting the cell. (Doc. No. 30 at ¶ 12). Stanback applied the handcuffs to Plaintiff through the wicket door and Plaintiff exited the cell. (Id. at ¶ 13). Stanback used a soft touch escort (meaning Stanback kept his hand on Plaintiff's arm above his elbow) as Plaintiff walked in front of Stanback from his cell and towards the sallyport (or slider) to exit the housing unit. (Id.).

Snipes returned to the housing unit with Sergeant Kiker. (Doc. No. 31 at ¶ 13). As Snipes and Kiker approached the slider, Plaintiff pulled away from Stanback and attempted to head-butt Snipes, and then Plaintiff kicked Snipes. (Doc. No. 30 at ¶¶ 14-15; Doc. No. 31 at ¶¶ 14-15). Snipes attempted to stop Plaintiff's attack by deploying an approved self-defense technique—a strike to the left brachial plexus area (the left-side of the chest, near the shoulder) referred to by Defendants as a "CRDT strike"—but he missed due to Plaintiff's continued movement and resistance. (Doc. No. 30 at ¶ 16; Doc. No. 31 at ¶ 16). Throughout this time, Stanback and Kiker continued to order Plaintiff to stop his assault and to stop resisting efforts to subdue him. (Doc. No. 30 at ¶ 17).

Stanback and Kiker also attempted to stop Plaintiff by placing him on the floor, but Plaintiff resisted their efforts. (Doc. No. 30 at ¶¶ 18, 19). During Stanback's and Kiker's efforts to put Plaintiff on the floor, Plaintiff pulled back and away from them with such force that he fell backward into a laundry cart that was in the hallway. (Id.; Doc. No. 31 at ¶ 20). Defendants

5

Stanback and Snipes both state in their affidavits that Plaintiff's fall into the laundry cart was the result of a struggle between Plaintiff, Stanback, and Kiker to get Plaintiff to the floor to submit to full restraints. (Id. at ¶ 21). Defendants deny intentionally placing Plaintiff in the laundry cart. (Id.). Defendants assert that when the officers attempted to push Plaintiff to the floor, from the shoulder or chest area, he pulled back and away from them resulting in his fall backwards and into the laundry cart. (Id.). During this time, Plaintiff was continually being ordered to stop his assault and resistance and to submit to the escort. (Doc. No. 30 at ¶ 20).

Plaintiff initially became compliant, so they lifted him out of the cart and continued walking to the medical area. (Id. at ¶ 21). Plaintiff became combative again, so Stanback and Kiker placed Plaintiff on the floor and put him in full restraints. (Id. at ¶ 22). Stanback and Kiker then escorted Plaintiff for evaluation by medical staff. (Id.).

Plaintiff suffered very minimal injuries from the incident. A nurse noted redness in Plaintiff's left eye and an open area on Plaintiff's left wrist. (Doc. 29-2 at 5, 16). Plaintiff was charged with a disciplinary infraction for his assault of Officer Snipes, but the infraction was ultimately dismissed due to procedural errors with the disciplinary paperwork. (Doc. No. 29 at ¶ 20; Ex. C).

Plaintiff filed two grievances about the incident while he was housed at Alexander. (Id. at ¶ 22, Ex. D). In the grievance response to Grievance 4870-S-15-170, staff explained to Plaintiff why his disciplinary infraction was dismissed and that force was only used during the February 8, 2015, incident to gain his compliance. (Id.). In the Grievance response to Grievance 4870-S-15-076, staff explained that Plaintiff had been medically screened following the use of force incident, indicating that he had not been denied medical attention. (Id).

6

## II.   STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions,

> documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

## III. DISCUSSION

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475 U.S. at 320-21. Furthermore, although the fact that the prisoner suffered only minor injuries is not dispositive in an excessive force claim, the lack of serious injury may be considered a factor in the excessive force analysis. See Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

Here, as noted, and despite that the Court entered an order advising Plaintiff of his right to respond, Plaintiff did not respond to the summary judgment. Therefore, he is deemed to have

8

abandoned his claims.[2]  In any event, the evidence on summary judgment shows that the force used by Defendants was not excessive, and Plaintiff has presented no evidence to raise an issue of material dispute as to his excessive force claim.  Defendants' summary judgment materials show that, on February 8, 2015, Defendants Snipes and Stanback applied force in a good faith effort to restore discipline and order and Plaintiff suffered no more than de minimis injury from the force used against him.  The evidence on summary judgment shows that Plaintiff was removed from his cell and was non-cooperative and assaultive as officers attempted to escort him to the medical area; Plaintiff attacked Officer Snipes and was non-compliant as Stanback and Kiker attempted to restrain him; Snipes attempted to stop the attack by deploying a self-defense technique, which missed Plaintiff due to his movement; due to Plaintiff's non-compliance and

---

[2]  Although Plaintiff did not respond to the summary judgment motion, thus effectively abandoning his claims, his complaint is verified, meaning it can therefore be considered as an opposing affidavit on summary judgment.  However, Plaintiff's version of the events of February 8, 2015, is blatantly contradicted by all available evidence.  That is, given the evidence presented on summary judgment by Defendants, particularly in light of Plaintiff's very minimal injuries, no reasonable jury would accept Plaintiff's conclusory allegations in his Complaint that, without any provocation by Plaintiff, Defendant Snipes "severely maul[ed] plaintiff with a series of punches to the face," Defendant Stanback "joined defendant Snipes in the assault against plaintiff, by punching and keening plaintiff in various parts his body," and that Defendants then "threw him head first into a dirty clothes buggy giving further pain and injury to plaintiff's face, head, neck and shoulders, back."  See Smith v. Ozmint, 578 F.3d 246, 254 (4th Cir. 2009) ("Although the undersigned does not make a credibility determination, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'") (citing Scott v. Harris, 550 U.S. 372, 380 (2007)). Accord Solomon v. Felker, No. 08-cv-2544, 2015 WL 1469165, at "7 (E.D. Calif. Mar. 27, 2015) ("The factual context of plaintiff's claim of excessive force is implausible because the injuries described in plaintiff's medical records do not support his claim that he was beaten."); Lanier v. Smith, No. 3:08-cv-833, 2009 WL 3853170, at *8 (M.D. Fla. Nov. 18, 2009) (stating that "the medical evidence is consistent with the amount of force Defendants allege they used to restrain Plaintiff and restore order and is inconsistent with Plaintiff's allegations" in his verified complaint).

9

because of Plaintiff's movement toward Defendant Snipes, he fell backward into a laundry cart; and he was then placed in full restraints and taken to the medical area. Applying the Whitley factors, the Court finds that Plaintiff has not raised a genuine issue of dispute as to whether Defendants used excessive force against him. That is, Defendants used only the minimal and appropriate amount of force to achieve the correctional objective of restraining Plaintiff. Thus, the need and amount of force used were closely matched. Given that Plaintiff was actively attacking Snipes, it was necessary for these officers to stop Plaintiff's attack and restrain him to prevent the potential for injury to Plaintiff or staff.

Moreover, as noted, the evidence on summary judgment shows that Plaintiff suffered only minimal injury from the incident—that is, redness in his left eye and an open area on his left wrist.[3] While the extent of that injury (or lack thereof) cannot be dispositive under Wilkins, it most certainly is indicative as to the amount of force applied to Plaintiff. In sum, the Court finds that Defendants Snipes and Stanback are entitled to summary judgment as to Plaintiff's excessive force claim. To the extent that Plaintiff purports to bring a related claim for failure to intervene in the alleged force, because there was no excessive force, there was no corresponding duty to intervene. Thus, Defendants are entitled to summary judgment as to Plaintiff's Eighth Amendment claims against them.

IV. CONCLUSION

In sum, for the reasons stated herein, the Court finds that Plaintiff has not raised a genuine dispute as to whether Defendants Stanback and Snipes used excessive force against

---

[3] Although there is no videotape footage, the record does contain a still photo taken of Plaintiff after the incident. (Doc. No. 29-2 at 19). The photograph, however, is grainy and dark and therefore does not contribute to the determination as to Plaintiff's injuries.

Plaintiff, or whether Defendants are liable for failure to intervene. Thus, Defendants are entitled to summary judgment. Finally, as to Plaintiff's remaining state law claims against Defendants for assault and battery, the Court declines to assert supplemental jurisdiction over the state law claims and they will, therefore, be dismissed without prejudice. See 28 U.S.C. §1367(a).

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 27), is **GRANTED**. Plaintiff's Eighth Amendments claims are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and those claims are therefore dismissed without prejudice.

2. The Clerk is directed to terminate this action.

Signed: February 16, 2017

Frank D. Whitney
Chief United States District Judge